NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| IVAN G. MCKINNEY, | : | |
| Plaintiff, | : | Civ. No. 15-7442 (KM) (MAH) |
| v. | : | |
| NURSE CUCINELLA, et al. | : | **OPINION** |
| Defendants. | : | |

**KEVIN MCNULTY, U.S.D.J.**

## I.    INTRODUCTION

The plaintiff, Ivan G. McKinney, is a state prisoner currently incarcerated at the New Jersey State Prison in Trenton, New Jersey. He is proceeding *pro se* with a civil rights compliant filed pursuant to 42 U.S.C. § 1983. This complaint (ECF no. 1) had its origin in a "motion to amend," which sought to add unrelated claims to another action, one of five that Mr. McKinney has pending. Dated May 25, 2015, it was filed on June 29, 2015, in civil action 14-3564 (ECF no. 10). I required that the additional claims be filed in this, a separate action. *See* ECF no. 2.

Mr. McKinney has now filed an application to proceed *in forma pauperis,* which will be granted. The Clerk will be ordered to file the complaint.

This Court must now review the complaint (ECF no. 1) pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from suit. For the reasons set forth below, the complaint will be permitted to proceed in part.

## II.    BACKGROUND

The allegations of this civil rights complaint are construed as true for purposes of this Opinion. Mr. McKinney names a plethora of defendants and different claims in his complaint. Almost all seem to involve events at the New Jersey State Prison, where he is currently incarcerated. The allegations of the complaint are as follows:

1. Officer Broskie assaulted Mr. McKinney on May 27, 2013 using excessive force causing a left wrist injury.

2. Nurse Cucinella deliberately withheld medication on May 27, 2013 for a chronic situation in retaliation for complaints against the medical department.

3. Officer Adcock refused to give Mr. McKinney toilet paper while he was in detention from May 28, 2013 until June 2, 2013. Officer Adcock also refused to allow Mr. McKinney to shower for seventy-two hours. Mr. McKinney also asked Officer Adcock to show him to medical because he was in pain, yet did not see medical for seventeen days.

4. Sergeant/Ms. Peel subjected Mr. McKinney to false imprisonment and false arrest on May 28, 2013 in retaliation for the incident with Officer Broskie. Upon leaving "the hole" on June 2, 2013, Mr. McKinney told her he feared retaliation from Broskie, but Sgt. Peel, who promised to speak to Broskie, never did, and Broskie retaliated when he got back to the unit.

5. On June 6, 2013, Nurse Zisa showed Officer Lazar Mr. McKinney's slip regarding a medical appointment. This behavior was deliberately indifferent and retaliatory because Officer Lazar harassed Mr. McKinney after that.

6. On June 6, 2013, Officer Lazar harassed and retaliated against Mr. McKinney because he complained about his injury that was caused by his colleague, Officer Broskie.

7. From May 27, 2013 until June 14, 2013, John and Jane Does refused to give Mr. McKinney medical attention for seventeen days for his injured left wrist.

8. Nurse Creamer refused to render medical attention on Mr. McKinney's injured left wrist after she told him she was told not to treat him or else she would be fired.

9. Officer Sevino and Officer John Doe assaulted Mr. McKinney on July 25, 2013 when they slammed his head into an elevator.

10. Officer Broskie retaliated against Mr. McKinney on June 2, 2013 by refusing to give him recreation time and made him wait three hours for a mattress. Additionally, Mr. McKinney could not call his son for his birthday.

11. From February 2, 2013 until August 1, 2013, Lieutenant Accacios, Sergeant Torre, Warden Biggott, Captain Davies and Sgt. Peel subjected Mr. McKinney to cruel and unusual punishment when he was in his cell for thirty-one hours straight from Tuesdays to Wednesdays during this period.

### III.    LEGAL STANDARDS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

3

Thus, to state a claim for relief under § 1983, a plaintiff must allege first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

Under the Prison Litigation Reform Act, Pub.L. 104-134, §§ 801-810,110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis, see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e. The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B).

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 42 U.S.C. § 1997e(c)(l)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), as explicated by the United States Court of Appeals for the Third Circuit. To survive the court's screening for failure to state a claim, the complaint must allege 'sufficient factual matter' to show that the claim is facially plausible. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d

Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

   *Pro se* pleadings, as always, will be liberally construed. *See Haines v. Kerner*, 404 U.S. 519 (1972). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

## IV.   DISCUSSION

### A. Officer Broskie

   Mr. McKinney's first allegation is that, on May 27, 2013, Officer Broskie used excessive force on him and hurt his left wrist. For a prisoner to state an Eighth Amendment claim for the excessive use of force by a prison official, he must show that the force was not applied in a good-faith effort to maintain or restore discipline, but that it was maliciously and sadistically used to cause harm. *See Hudson v. McMillian,* 503 U.S. 1, 7 (1992).

> In determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, courts look to several factors including: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

*Brooks v. Kyler,* 204 F.3d 102, 106 (3d Cir. 2000) (internal quotation marks and citation omitted). Mr. McKinney's allegations against Officer Broskie fail to state an excessive force

5

claim. He does not allege the circumstances which led Officer Broskie to use force against him. He does not allege that the force was applied maliciously and sadistically, and not applied in a good faith effort to maintain or restore discipline. Therefore, this claim will be dismissed without prejudice for failure to state a claim upon which relief may be granted.

After the May 27, 2013 incident, Mr. McKinney alleges that he was released from "the hole" on June 2, 2013. He claims that Officer Broskie then refused to give him his recreation time and that he waited three hours for a mattress. Furthermore, he states he was not allowed to call his son on his birthday.

One court has summarized the standards applicable to a lack-of-recreation claim thus:

> There is no question that meaningful recreation 'is extremely important to the psychological and physical well-being of the inmates.'" *Peterkin v. Jeffes,* 855 F.2d 1021, 1031 (3d Cir. 1988), *quoting Spain v. Procunier,* 600 F.2d 189, 199 (9th Cir. 1979). Nonetheless, "although exercise is 'one of the basic human necessities protected by the Eighth Amendment,' *LeMaire v. Maass,* 12 F.3d 1444, 1457 (9th Cir. 1993), a temporary denial of exercise with no medical effects is not a substantial deprivation." *Bank v. Nicklin,* 2011 WL 397651 at *7 (M.D. Pa. Feb. 2, 2011), *citing May v. Baldwin,* 109 F.3d 557, 565 (9th Cir. 1997) (determining that the denial of recreation for twenty-one days was insufficient to sustain an Eighth Amendment claim); *Knight v. Armontrout,* 878 F.2d 1093, 1096 (8th Cir. 1989) (finding that the denial of recreation for thirteen days does not amount to cruel and unusual punishment); *French v. Owens,* 777 F.2d 1250, 1255 (7th Cir. 1985) (pointing out that lack of exercise may rise to a constitutional violation only "where movement is denied and muscles are allowed to atrophy, [and] the health of the individual is threatened"). See also *Wright, III v. State Correctional Inst. at Greene,* 2007 WL 2852527 at *6 (W.D. Pa. Sept. 27, 2007) (holding that Plaintifffs allegation that he was denied outdoor exercise "randomly" over a period of three months on the basis of "inclement weather" was insufficient to state an Eighth Amendment claim, particularly where Plaintiff failed to allege physical harm and failed to "set out at least an approximate number of times he was denied outdoor exercise"); *Castro v. Chesney,* 1998 WL 767467, at *12 (E.D. Pa. Nov. 3, 1998) (holding that deprivation of exercise for "several days" without

evidence of "a tangible physical harm which resulted from the
denial of exercise" did not rise to the level of an Eighth
Amendment violation).

*Gailbreath v. Covert*, No. 10-228, 2011 WL 3475544, at *5 (W.D. Pa. July 20, 2011), *report and*

*recommendation adopted*, 2011 WL 3473360 (W.D. Pa. Aug. 9, 2011). *See also Hakim v.*

*Levinson*, No. 08-4012, 2008 WL 4852612, at *6 (D.N.J. Nov. 3, 2008) ("[L]ack-of-recreation

allegations pass muster under § 1983 only if the plaintiff asserts that the totality of prison

conditions so deprived him/her of exercise that the plaintiff suffered a tangible physical harm,

and that such prison conditions resulted from the officials' aim to punish the plaintiff rather than

from legitimate governmental goals, e.g., inmates/personnel's safety and/or maintenance of the

institution.")

  Mr. McKinney's complaint does not allege that he was deprived of any particular amount

of recreation time or that his health was affected. Such allegations fail to state a claim against

Officer Broskie, and this portion of the claim will be dismissed without prejudice.

  Deprivation of a mattress for three hours does not rise to the level of a constitutional

violation. This portion of the claim will be dismissed with prejudice for failure to state a claim.

*See, e.g., White v. Greene Cnty. Sheriff's Dept.*, No. 09-0211, 2014 WL 3058393, at *5 (E.D.

Tenn. July 7, 2014) (lack of mattress for short period of less than three hours does not support a

constitutional violation with respect to conditions of confinement).

  Denial of permission for Mr. McKinney to call his son on his birthday likewise fails to

rise to the constitutional level. "The constitutional right at issue has been described as the right to

communicate with people outside prison walls, and a 'telephone provides a means of exercising

this right.'" *Almahdi v. Ashcroft*, 310 F. App'x 519, 521-22 (3d Cir. 2009) (quoting *Valdez v.*

*Rosenbaum*, 302 F.3d 1039, 1048 (9th Cir. 2002)). Nevertheless, "prisoners 'ha[ve] no right to

unlimited telephone use,' and reasonable restrictions on telephone privileges do not violate their

First Amendment rights." *Id.* at 522 (citing *Washington v. Reno*, 35 F.3d 1093, 1099-1100 (6th Cir. 1994)). Thus, "a prisoner's right to telephone access is 'subject to rational limitations in the face of legitimate security interests of the penal institution.'" *Id.* (quoting *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986)). Furthermore, courts have stated that where a prisoner plaintiff has alternative means of communicating with persons outside of the prison—by mail, for example—denial of telephone access does not violate the Constitution. *See id.* ("Almahdi makes no assertion – and there is no evidence – that he lacked alternative means of communicating with persons outside the prison .... Accordingly the telephone restrictions did not violate the First Amendment.") (internal citation omitted); *see also Johnson* v *Bledsoe*, No. 12-0097, 2012 WL 258680, at *2 (M.D. Pa. Jan. 27, 2012) ('More recent decisions have concluded that where an inmate has available, alternative means of communicating with the outside world, i.e., mail privileges, a § 1983 action alleging improper denial of telephone access was subject to dismissal.') (citing *Acosta v. McGrady*, No. 96-2874, 1999 WL 158471, at *7 (E.D. Pa. Mar. 22, 1999); *Pitsley v. Ricks*, No. 96-0372, 2000 WL 262023, at *5 (N.D.N.Y. Mar. 31, 2000); *Ingalls v. Florio*, 968 F. Supp. 193, 203 (D.N.J. 1997)).

Mr. McKinney's claim that he was not permitted to call his son on the date of his birthday fails to state a constitutional claim and will be dismissed with prejudice. He does not allege that all means of communication were cut off. Instead, he merely alleges that he was not permitted a phone call to one particular person on one particular day of sentimental significance. That does not rise to the level of a constitutional violation.

The recreation, mattress, and birthday allegations may also be intended as a retaliation claim against Officer Broskie.

> "A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials

8

> sufficient to deter a person of ordinary firmness from exercising
> his constitutional rights, and (3) a causal connection between the
> exercise of his constitutional rights and the adverse action taken
> against him."

*Mack v. Yost,* 427 F. App'x 70, 72 (3d Cir. 2011) (quoting *Mitchell v. Horn,* 318 F.3d 523, 530

(3d Cir. 2003)). With respect to the third element, the plaintiff must allege that the

constitutionally protected conduct was a substantial or motivating factor for the adverse action.

*See Velasquez v. Diguglielmo,* 516 F. App'x 91, 95 (3d Cir. 2013) (citing *Cater v. McGrady,* 292

F.3d 152, 157, 158 (3d Cir. 2002); *Rauser* [*v. Horn*, 241 F.3d [330,] 333 [(3d Cir. 2001)])).

Furthermore:

> To establish the requisite causal connection for a retaliation claim
> predicated on the First Amendment, the plaintiff (here, a prisoner)
> usually has to prove one of two things: (1) an unusually suggestive
> time proximity between the protected activity and the allegedly
> retaliatory action; or (2) a pattern of antagonism coupled with
> timing to establish a causal link. *Lauren W. ex rel. Jean W. v.
> DeFlaminis,* 480 F.3d 259, 267 (3d Cir. 2007). If neither of these
> showings is made, then the plaintiff must show that, from the
> evidence in the record as a whole, the trier of fact should infer
> causation." *Id.*

*DeFranco v. Wolfe,* 387 F. App'x 147, 154 (3d Cir. 2010). While temporal proximity is relevant

in First Amendment retaliation cases, *see Ambrose v. Twp. of Robinson, Pa.,* 303 F.3d 488, 494

(3d Cir. 2002) (citing *Rauser,* 241 F.3d at 334), "'[t]he mere passage of time is not legally

conclusive proof against retaliation.'" *Marra v. Phila. Housing Auth.,* 497 F.3d 286, 302 (3d Cir.

2007) (quoting *Robinson v. Southeastern Pa. Transp. Auth.,* 982 F.2d 892, 894 (3d Cir. 1993))

(other citation omitted).

Here, Mr. McKinney uses the word retaliation, but alleges only that Broskie took various

actions against him. He does not allege any constitutionally protected conduct that gave rise to

the alleged retaliation. I note also that these fairly minor actions would probably not suffice to deter a person of reasonable firmness from exercising constitutional rights.

The retaliation component of the claim against Officer Broskie is dismissed without prejudice for failure to state a claim upon which relief may be granted.

B. Nurse Cucinella

Mr. McKinney next alleges that on May 27, 2013, Nurse Cucinella withheld medication in retaliation for his many complaints against the medical department.

> For the delay or denial of medical care to rise to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, a prisoner must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). We have found deliberate indifference where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse*, 182 F.3d at 197. Deference is given to prison medical authorities in the diagnosis and treatment of patients, and courts "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment... (which) remains a question of sound professional judgment." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)). Allegations of negligent treatment or medical malpractice do not trigger constitutional protections. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976).

*Pierce v. Pitkins*, 520 F. App'x 64, 66 (3d Cir. 2013). Deliberate indifference can also be found "where the prison official persists in a course of treatment in the face of resultant pain and risk of permanent injury." *See McCluskey v. Vincent*, 505 F. App'x 199, 202 (3d Cir. 2012) (internal quotation marks and citation omitted). "A medical need is serious if it 'has been diagnosed by a

physician as requiring treatment,' or if it 'is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *See Mitchell v. Beard*, 492 F. App'x 230, 236 (3d Cir. 2012) (quoting *Atkinson v. Taylor*, 316 F.3d 257, 272-73 (3d Cir. 2003) (quoting *Monmouth Cnty. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987))).

Mr. McKinney alludes to a "chronic situation" requiring unnamed medication. That does not state a deliberate indifference claim with the requisite level of specificity because it is unclear what medication Mr. McKinney was refused and whether his medical needs were in fact serious. Thus, this claim will be dismissed without prejudice for failure to state a claim upon which relief may be granted.

Mr. McKinney also casts his allegations against Nurse Cucinella as a claim of retaliation for complaining about the medical department. Mr. McKinney does not state what the complaints were, and he does not allege that Nurse Cucinella had any knowledge of his complaints. The required specificity and causal connection are lacking. *Jordan v. Hastings,* No. 12–7932, 2013 WL 3810577, at *4 (D.N.J. July 22, 2013) (finding that plaintiff failed to allege causal connection to sustain retaliation claim where he failed to allege that defendants had knowledge of his constitutionally protected activity); *Griffin–El v. Beard,* No. 06–2719, 2013 WL 228098, at *5 (E.D. Pa. Jan. 22, 2013) ("[A] defendant may not be held liable for retaliation absent evidence sufficient to show that the defendant knew of the plaintiff's protected activity.") (citing *Laskaris v. Thornburgh,* 733 F.2d 260, 265 (3d Cir. 1984); *Booth v. King,* 228 F. App'x 167, 172 (3d Cir. 2007); *Jacobs v. Pa. DOC,* No. 04–1366, 2009 WL 3055324, at *5 (W.D. Pa. Sept.21, 2009)).

Accordingly, this claim will also be dismissed without prejudice for failure to state a claim.

C. Officer Adcock

Mr. McKinney raises three distinct claims with respect to Officer Adcock. First, Mr. McKinney alleges that Officer Adcock subjected him to cruel and unusual punishment because he refused to give him toilet paper from May 28, 2013 to June 2, 2013. Second, Mr. McKinney alleges that Officer Adcock refused to allow him to shower for a period of three days. Finally, Mr. McKinney states that Officer Adcock "aided medical in not seeing me about my left wrist while I was in detention. I kept asking him to call medical because I was in pain, he said 'he did and wrote it in the book.' I did not see medical after the initial visit for about 17 days." (Dkt. No. 1 at p.1)

The Eighth Amendment requires prison officials to provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer,* 468 U.S. 517, 526–527 (1984)). A prisoner asserting a conditions-of-confinement claim must show that the alleged deprivation is "sufficiently serious" and that he has been deprived of the "minimal civilized measure of life's necessities." *Id.* at 834 (citing *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981)).

In addition, a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official is deliberately indifferent, that is, the official knows of and disregards a substantial risk of serious harm to inmate health or safety. *Farmer,* 511 U.S. at 837. The official must both be aware of facts from which he could infer that a substantial risk of serious harm exists, and he must draw that inference. *See id.* at 837, 847 (holding that both subjective and objective components must be satisfied).

12

Mr. McKinney's allegations that he was without toilet paper for five days and not given a shower for three days do not state constitutional violations against Officer Adcock. *See Harris v. Fleming*, 839 F.2d 1232, 1234 (7th Cir. 1988) (denial of toilet paper for five days, and lack of soap, toothbrush, and toothpaste for ten days, was unpleasant but did not violate the Constitution); *Davis v. Villers*, No. 12-0048, 2012 WL 7017863, at *6 (N.D. W. Va. Oct. 9, 2012), *report and recommendation adopted*, 2013 WL 459747 (N.D. W. Va. Feb. 7, 2013) ("[A]s regrettable and unfortunate as it might have been, the plaintiff having been deprived the use of toilet paper for five days does not, by itself, rise to the level of a constitutional violation.") (citing *Gilland v. Owens,* 718 F. Supp. 665, 685 (W.D. Tenn. 1989) ("Short term deprivation of toilet paper ... and the like do not rise to the level of a constitutional violation"); *Schwartz v. Jones,* No. 99–3269, 2001 WL 118600 at *6 (E.D. La. Feb. 9, 2001) (Failure to provide plaintiff toilet paper for one to two weeks did not state a claim of constitutional magnitude); *Gilson v. Cox,* 711 F. Supp. 354, 355–56 (E.D. Mich. 1989) (Failure to provide toilet paper upon request did not raise a substantial matter of federal constitutional law; *Citro v. Zeek,* 544 F. Supp. 829, 830 (W.D.N.Y 1982) (Failure to provide an inmate with an adequate supply of toilet paper did not present a question of constitutional magnitude); *Williams v. Campbell,* No. 07–885, 2008 WL 2816089 at *7 (E.D. Pa. July 18, 2008) (Temporary deprivation of toilet paper insufficient to establish a constitutional violation)); *see also Adderly v. Ferrier*, 419 F. App'x 135, 139-40 (3d Cir. 2011) (holding denial of toiletries, mail, and shower for seven days failed to state Eighth Amendment claim). Accordingly, Mr. McKinney's conditions of confinement claim against Officer Adcock will be dismissed with prejudice for failure to state a claim upon which relief may be granted.

Mr. McKinney has also failed to state a claim of deprivation of medical care against Officer Adcock. Indeed, Mr. McKinney states that he asked Officer Adcock to "call medical" because he was in pain. Officer Adcock responded that he did call, and Mr. McKinney does not allege that Adcock failed to do so. It seems Officer Adcock did precisely what he was asked to do by Mr. McKinney: "call medical." Adcock was not deliberately indifferent to Mr. McKinney's serious medical needs.

For the foregoing reasons, Mr. McKinney's claims against Officer Adcock will be dismissed with prejudice for failure to state a claim upon which relief may be granted.

D. Sgt. Peel

Mr. McKinney alleges that Sgt. Peel of the Bergen County Sheriff's Department subjected him to false imprisonment and false arrest on May 25, 2013 when she "retaliated" against him because of the incident with Officer Broskie. According to Mr. McKinney, Sgt. Peel "had [him] sign a document [and] then filed in the document finding [him] guilty." (Dkt. No. 1 at p. 2) From the context, I interpret this to relate to Mr. McKinney's being placed in "the hole" (presumably, some form of administrative or punitive segregation). Interpreting further, I take this to be a claim that Sgt. Peel wrongfully initiated prison disciplinary charges that resulted in Mr. McKinney's being so confined.

"[C]onfinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest." *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002). Nevertheless, "[p]rison disciplinary proceedings may . . . constitute a denial of due process in the context of a civil rights action under § 1983 when they are instituted for the sole purpose of retaliating against an inmate for his/her exercise of a constitutional right." *Id.*

14

Mr. McKinney's allegations implicate no constitutional right that was being exercised by Mr. McKinney when Sgt. Peel purportedly retaliated against him by initiating and proceeding with the prison disciplinary proceedings. Thus, to the extent that Mr. McKinney is attempting to allege a retaliation claim, he has failed to state a claim upon which relief may be granted.

In addition, Mr. McKinney may be alleging that he was denied procedural due process before he was placed in "the hole" for approximately one week. Mr. McKinney's "procedural due process rights are triggered by deprivation of a legally cognizable liberty interest." *Mitchell v. Horn*, 318 F.3d 523, 531 (3d Cir. 2003). As stated above, however, confinement in punitive segregation, without more, rarely will be sufficient to implicate a liberty interest. *See Smith*, 293 F.3d at 653. Mr. McKinney has failed to allege how that placement imposed atypical and significant hardships on him in relation to the ordinary incidents of prison life. (He has also failed to describe whatever proceedings occurred; merely stating that the charges were false does not set forth a denial of due process.)  Accordingly, the allegations against Sgt. Peel arising from the disciplinary proceedings will be dismissed for failure to state a claim of denial of due process.

Mr. McKinney may also be attempting to allege a failure-to-protect claim against Sgt. Peel. He alleges that he told her on June 2, 2013, that he feared retaliation from Officer Broskie. Sgt. Peel allegedly told him that she would talk to Officer Broskie, but she never did.

To state a claim against a prison official for failure to protect, "the inmate must pled facts that show (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm." *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012) (citing *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994);

*Hamilton v. Leavy,* 117 F.3d 742, 746 (3d Cir. 1997)). "Deliberate indifference" is a subjective standard whereby "'the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.'" *Id.* (citing *Beers–Capitol v. Whetzel,* 256 F.3d 120, 125 (3d Cir. 2001)). As noted by the Third Circuit:

> It is not sufficient that the official should have known of the risk. [*Beers Capitol,* 256 F.3d at] 133. A plaintiff can, however, prove an official's actual knowledge of a substantial risk to his safety "in the usual ways, including inference from circumstantial evidence." *Farmer,* 511 U.S. at 842. In other words, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.*

*Bistrian,* 696 F.3d at 367.

Mr. McKinney has not alleged that he was incarcerated under conditions posing a substantial risk of serious harm. He says he feared Officer Broskie, but does not allege a well-founded basis for that fear. He alleges that his wrist was previously hurt in an altercation with Officer Broskie (the incident that apparently led to McKinney's disciplinary confinement in "the hole"). He says nothing, however, to indicate that the contact was wrongful or indicative of an ongoing threat. The "harm" that actually materialized consists only of failure to let Mr. McKinney telephone his son on his birthday, denial of unspecified recreational opportunities, and deprivation of a mattress for three hours. This is not cognizable "danger" or "harm" to "health and safety" that actually or potentially resulted from Peel's failure to "protect" McKinney.

Accordingly, Mr. McKinney's claims against Sgt. Peel will be dismissed without prejudice for failure to state a claim upon which relief may be granted.

E.  Nurse Zisa

Mr. McKinney alleges that on June 6, 2013, Nurse Zisa retaliated against him for his numerous complaints against the medical department. She allegedly retaliated by allowing Officer Lazar to see McKinney's slip requesting a medical appointment. The slip read, "I need to see someone regarding my injured left wrist from excessive force by an officer." (Dkt. No. 1 at p.2)

Merely showing an officer a request for a medical appointment does not constitute an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights. In addition, the Court notes that there are potentially valid reasons why an officer might need to see verification of a medical appointment, and McKinney does not allege that such justification was lacking. Accordingly, Mr. McKinney's claim against Nurse Zisa will be dismissed with prejudice for failure to state a claim.

F.  Officer Lazar

Mr. McKinney next alleges that on June 6, 2013, Officer Lazar harassed him because he complained about the wrist injury caused by Officer Broskie. These allegations are insufficient to state a Section 1983 claim. No conduct is specified; for all that appears here, it could have consisted of nothing more than verbal harassment. "[A]llegations of verbal abuse or threats, absent any injury or damage, are not cognizable under § 1983." *Brown v. Hamilton Twp. Police Dep't Mercer Cnty., N.J.,* 547 F. App'x 96, 97 (3d Cir. 2013) (citing *McBride v. Deer,* 240 F.3d 1287, 1291 n. 3 (10th Cir. 2001); *Freeman v. Arpaio,* 125 F.3d 732, 738 (9th Cir.1997)). Accordingly, Mr. McKinney's claim against Officer Lazar will be dismissed with prejudice for failure to state a claim.

G. John & Jane Does – Medical

Mr. McKinney asserts that John and Jane Does, employees of the Bergen County Sheriff's Department, refused to give him medical attention for seventeen days from May 27, 2013 to June 14, 2013 for his left wrist. Mr. McKinney fails to state a claim because he fails to allege facts to support a conclusion that his medical needs were so serious as to require medical attention. Accordingly, this Court will dismiss the claims against these unnamed defendants without prejudice for failure to state a claim upon which relief may be granted.

H. Nurse Creamer

Mr. McKinney asserts that Nurse Creamer refused to give him medical attention for his injured left wrist. Creamer allegedly told him she would like to help but that she would be fired if she did.

The allegations against Nurse Creamer are insufficient to state a claim. Mr. McKinney admits in the complaint that he did see "medical" for his wrist injury. The complaint never states what the diagnosis was, or what Nurse Creamer's specific involvement was. There are no allegations from which it could be inferred that the wrist injury, whatever it was, required more than one visit to medical.

Based on these allegations, Mr. McKinney has not alleged that Nurse Creamer acted with deliberate indifference to a serious medical need. Therefore, this Court will dismiss Mr. McKinney's claim against her without prejudice for failure to state a claim upon which relief may be granted.

I. Officer Sevino & John Doe

Mr. McKinney alleges that Officer Sevino and Officer John Doe used excessive force against him on July 25, 2013. This apparently occurred in connection with a court appearance for

18

sentencing. Officer Sevino and John Doe, he says, slammed his head into an elevator without justification. Depending on the context, these allegations might support a claim. The Court will permit Mr. McKinney's excessive force claims against these two defendants to proceed past screening so that they can be developed factually.[1]

J.   Lieutenant Accacios, Sergeant Torre, Warden Biggott, Captain Davies, Ms. Peel

Mr. McKinney alleges that defendants Accacios, Torre, Biggott, Davis and Peel subjected him to cruel and unusual punishment when he was subjected every Tuesday to Wednesday from February 7, 2013 to August 1, 2013 to thirty-one hours straight in his cell. Sporadic confinement for thirty-one hours is insufficient to state a constitutional claim. *See, e.g.,* *Murray v. Michael*, No. 03-1434, 2005 WL 2204985, at *16 (N.D.N.Y. Sept. 7, 2005) (two-day cell confinement does not rise to the level of cruel and unusual punishment). Accordingly, this Eighth Amendment claim against these defendants will be dismissed with prejudice for failure to state a claim upon which relief may be granted.

K.   State Law Claims

As to the defendants against whom the federal claims have been dismissed, the complaint could perhaps be construed to assert state law claims as well. Assuming that to be the case, the Court will decline to exercise supplemental jurisdiction. Because we are in the first stages of litigation and the federal claims against those defendants are so insubstantial that they do not survive screening, there is no prudential basis to consider their state law counterparts. *See* 28 U.S.C. § 1367(c)(3); *T.R. Cnty. of Delaware*, No. 13-2931, 2013 WL 6210477, at *8 (E.D. Pa. Nov. 26, 2013) (declining supplemental jurisdiction over state law claims over one defendant where there are no viable claims against that defendant, despite the fact that plaintiff may have

---

[1]    If Mr. McKinney succeeds in identifying this John Doe Officer, he shall submit to this Court an amended complaint that names this Officer so that the Court can order that the amended complaint be served on him.

pled plausible claims against another defendant) (citation omitted); *see also Nadal v. Christie*, No. 13-5477, 2014 WL 2812164, at *8 (D.N.J. June 23, 2014).

## V.   APPLICATION FOR A TEMPORARY RESTRAINING ORDER

Mr. McKinney has filed an application for a temporary restraining order ("TRO"). (*See* Dkt. No. 9) A preliminary injunction requires that a plaintiff demonstrate that (1) he is likely to succeed on the merits; (2) denial will result in irreparable harm to the plaintiff; (3) granting the injunction will not result in irreparable harm to the defendant; and (4) granting the injunction is in the public interest. *See Maldonado v. Houston*, 157 F.3d 179, 184 (3d Cir. 1988). Essentially the same standard applies to temporary restraining orders. *See Ballas v. Tedesco*, 41 F.Supp.2d 531, 537 (D.N.J. 1999).

As described above, all of Mr. McKinney's claims, with the exception of his excessive force claim against Officer Sevino and one John Doe defendant, have been dismissed. Mr. McKinney does not establish or even state factually that he will suffer irreparable harm if the TRO is not granted against Doe and Sevino. Nor does he allege any danger of recurrence of these events from two years ago. The request for a TRO is denied.

## VI.   ADDITIONAL CLAIMS

To his request for a TRO, Mr. McKinney has yet again attached what appears to be a proposed amended complaint that includes new defendants and new claims. These do not relate to the surviving allegations of the current complaint, or even to Mr. McKinney's incarceration at New Jersey State Prison. Rather, they relate to certain alleged events while Mr. McKinney was detained at the Bergen County Jail in November, 2015.

This Court has explained the issue of the proper joinder of claims to Mr. McKinney more than once and will not do so again. (*See* ECF no. 2; Civ. No. 13-2553 ECF nos. 5, 7).  Suffice it

to say that (a) new parties and claims will not be entertained unless Mr. McKinney makes a proper motion to amend under Rule 15; and (b) in any event, the Court will not join unrelated claims in a single action, *see* Fed. R. Civ. P. 20. For both of these reasons, I will not entertain these additional claims. He is of course free to assert them in yet another newly-filed action provided he submits files a complaint along with either the $400.00 filing fee or a complete application to proceed *in forma pauperis*.

### VII. MOTION FOR THE APPOINTMENT OF COUNSEL

Mr. McKinney has moved for the appointment of counsel. (*See* Dkt. No. 7) Indigent persons raising civil rights claims have no absolute right to counsel. *See Parham v. Johnson,* 126 F.3d 454, 456–57 (3d Cir. 1997). At a minimum, there must be some merit in fact or law to the claims the plaintiff is attempting to assert. *See Tabron v. Grace,* 6 F.3d 147, 155 (3d Cir. 1993). Once that threshold of merit is crossed, a court determining whether to appoint counsel will considers the following: (1) the plaintiff's ability to present his or her own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation; (4) the amount a case is likely to turn on credibility determinations; (5) whether the case will require the testimony of expert witnesses; and (6) whether the plaintiff can attain and afford counsel on his own behalf. *See id.* at 155–56, 157 n.5; *see also Cuevas v. United States,* 422 F. App'x 142, 144–45 (3d Cir. 2011) (reiterating the *Tabron* factors). Appointment of counsel is discretionary, and may be done at any point during the litigation, either *sua sponte* or upon motion. *See id.* at 156.

The only claim that has made it past screening is Mr. McKinney's claim that an unnamed Officer and Officer Sevino used excessive force against him. At this early stage of the case, this type of claim does not seem overly complex. Upon considering the factors outlined above, Mr.

McKinney has failed to show that the appointment of counsel is warranted at this time. Accordingly, this Court will deny Mr. McKinney's motion for the appointment of counsel without prejudice.

## CONCLUSION

For the foregoing reasons, this Court will permit only Mr. McKinney's claim of excessive force against Officer Sevino and a John Doe Officer to proceed past screening. (Dkt. No.1 p. 3 ¶9). Mr. McKinney's application for a TRO will be denied and his motion for the appointment of counsel will be denied without prejudice. An appropriate order consistent with this Opinion will be entered.


DATED:  June 2, 2016                                    _____
                                                         KEVIN MCNULTY
                                                         United States District Judge